**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| STEPHEN WILLIAMS, *Plaintiff*, | ) | 3:25-CV-00600 (SVN) |
| v. | ) | |
| FEDERAL AVIATION ADMINSITRATION, et al., *Defendants*. | ) | September 28, 2026 |

**<u>OMNIBUS RULING AND ORDER ON VARIOUS OUTSTANDING MOTIONS</u>**

Sarala V. Nagala, United States District Judge.

In his fifth complaint[1] in this action, Plaintiff Stephen Williams, proceeding *pro se*, alleges that Defendants—the Federal Aviation Administration ("FAA"), FAA Administrator Bryan Keith Bedford sued in his official capacity, and John and Jane Does, unidentified FAA officials sued in their individual capacities—have violated his rights by failing to maintain "constitutionally adequate administrative capacity for examiner deployment and petition processing" in connection with aviation certifications. The operative complaint asserts five claims: (1) "systemic due process violation[s]" pursuant to the Fifth Amendment's Due Process Clause; (2) equal protection violations on a selective enforcement theory, pursuant to the Fifth Amendment's Equal Protection Clause; (3) *Bivens*[2] claims against unidentified FAA personnel relating to processing delays, retaliatory investigations, and "policy changes designed to avoid legal accountability during

[1] Plaintiff has labeled his amended complaints "Second Complaint," "Third Complaint," and so on rather than using the conventional naming structure ("First Amended Complaint," "Second Amended Complaint," and so on). The currently operative complaint is ECF No. 49-1, which Plaintiff has labeled as the "Fifth Complaint." The Court and Defendants have previously erroneously referred to this document as the "Fifth Amended Complaint," when it is in fact the Fourth Amended Complaint, and the fifth complaint Plaintiff has filed in this matter. To avoid confusion, the Court refers to ECF No. 49-1 as the "operative complaint" throughout this Order.

[2] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

pending litigation"; (4) a claim pursuant to the Mandamus Act; and (5) a violation of the Freedom of Information Act ("FOIA").

There are five motions pending before the Court, which are resolved as follows, for the reasons described in this Order. First, Defendants move to dismiss Counts One, Two, and Four of the operative complaint on the basis that Plaintiff lacks standing to bring those claims; in the alternative, Defendants assert that Plaintiff fails to state a claim on Counts One and Four. Mot. to Dismiss, ECF No. 73. As to this motion, the Court agrees with Defendants and dismisses Counts One, Two, and Four. Second, Plaintiff moves to file a sur-reply in opposition to the motion to dismiss, Mot. to File Sur-Reply, ECF No. 93, which the Court denies. Third, Defendants move to stay discovery pending the resolution of the instant motion to dismiss. Mot. to Stay, ECF No. 84. The Court finds that this motion is moot. Fourth, Plaintiff moves to compel Defendants' responses to two sets of discovery requests. Am. Mot. to Compel, ECF No. 87. The Court grants this motion in part and denies it in part. Fifth, Plaintiff moves for equitable tolling of the statute of limitations with respect to Count Three, Mot. for Equit. Tolling, ECF No. 89; this motion is denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In evaluating the instant motions, the Court assumes the truth of the allegations of the operative complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For the purposes of setting forth relevant background information about the procedural history in this case, where noted, the Court also references facts not alleged in the operative complaint.

### A. Factual Allegations Specific to Plaintiff

Plaintiff is a commercially licensed pilot with decades of aviation experience. *See* ECF No. 49-1 ¶ 32. In 2022, Plaintiff sought to obtain a "CFI-G" certification to become a certified flight instructor with a glider rating. *Id.* Plaintiff was awarded a scholarship from the Connecticut Soaring Association for his CFI-G training. *Id.* Plaintiff does not provide an exhaustive list of the

prerequisites for CFI-G certification, but the operative complaint suggests that applicants must obtain required endorsements, pass a knowledge test, and pass a practical test (potentially among other requirements). *See id.* ¶ 33. By October 15, 2022, Plaintiff had met all of the prerequisites to take his CFI-G practical test, including passing a knowledge test with a score that was valid until July 31, 2023. *Id.*

The "default examination method" for the required practical testing is through Aviation Safety Inspectors ("ASIs"), with Designated Pilot Examiners ("DPEs") performing testing "as an accommodation to enhance capacity and convenience." *Id.* ¶ 21. Plaintiff attempted to schedule his CFI-G practical exam between October 15, 2022, and July 31, 2023, with the FAA's Bradley Flight Standards District Office. *Id.* ¶ 34. Only one examiner was available to conduct examinations, and he declined to conduct Plaintiff's practical test in the winter months. *Id.* The examiner thereafter added Plaintiff to a waitlist and did not follow up. *Id.* Plaintiff attempted to contact DPEs in other states, as well as FAA officials, but did not receive a response. *Id.* ¶ 35. Plaintiff does not specifically allege that his knowledge test expired before he was able to take his practical exam, but the operative complaint suggests that sequence of events. *See id.* ¶ 34 (alleging that there was a "nine-month scheduling failure"); ¶ 46 (asserting that the FAA "prevent[ed] Plaintiff from timely obtaining CFI-G certification"); *id.* ¶ 37 (asserting that Plaintiff had to petition in December of 2023 for an extension of the validity of his knowledge test "due to the FAA's systematic failure to maintain adequate examiner capacity").[3] Plaintiff asserts that, as a

[3] Plaintiff's second amended complaint also makes this allegation explicit. *See* ECF No. 28-1 ¶ 13 ("The FAA's refusal [to schedule Plaintiff's practical test] caused the delays that led to the test's expiration on 31 July 2023."). It was also made explicit in Plaintiff's prior case before the undersigned. *Williams v. Smith*, No. 3:22-CV-1630 (SVN), 2024 WL 3292725, at *2 (D. Conn. July 3, 2024) (noting that Plaintiff had alleged that one of the prerequisites to take the practical test, a logbook endorsement, expired on December 31, 2022; that the knowledge test report expired on July 31, 2023; and that Plaintiff neither held the necessary medical certificate nor possessed a valid driver's license, one of the criteria for meeting alternative medical requirements), *aff'd*, 2025 WL 1045419 (2d Cir. Apr. 17, 2026) (summary order).

result, he lost his scholarship, has "foregone opportunities to contribute aviation expertise," and has experienced "constructive barriers to professional development." ECF No. 49-1 ¶ 20.

On December 29, 2023, Plaintiff filed an exemption petition with the FAA, seeking a one-year extension of the validity of his knowledge test. *Id.* ¶ 37. The FAA took 535 days to process Plaintiff's petition, which Plaintiff asserts was "186 days longer than any comparable petition and 3.2 times the average processing time for similar requests." *Id.* ¶ 38. While the petition was in processing, and after Plaintiff filed a lawsuit challenging the delays in scheduling his practical exam, "FAA officials forwarded Plaintiff's legal complaint to the FAA Medical Section, triggering a collateral investigation based on litigation activity." *Id.* ¶ 39. The FAA did not take any enforcement action as a result of its medical investigation. *Id.*[4]

On May 6, 2025, Plaintiff filed a FOIA request seeking the FAA's records on "exemption processing patterns and examiner deployment decisions." ECF No. 49-1 ¶ 42. The FAA failed to respond to Plaintiff's FOIA request within the required 20-business-day deadline. *Id.*

B. <u>"Structural Deficiency" Allegations</u>

The operative complaint asserts that the FAA has failed to make good on its historical promises to provide local, timely access to practical tests. *Id.* ¶¶ 14–15. Plaintiff alleges that decades-long institutional failures within the FAA have created a shortage of practical test examiners. *Id.* ¶ 15. In 2018, the FAA adopted policy changes lifting geographic limitations and increasing daily testing caps, apparently in an attempt to improve its systems. *Id.* ¶ 16. Congress also enacted the FAA Reauthorization Act of 2018, which included a provision relating to ensuring an adequate number of DPEs are deployed and available to perform their duties. *Id.* ¶ 27. Improvement never came, and documented DPE shortages continue. *Id.* ¶ 17.

[4] The FAA denied Plaintiff's exemption petition on June 17, 2025. ECF No. 28-1 ¶ 18.

In 2022, a survey indicated that sixty percent of flight schools reported applicants waiting three weeks or longer for DPE "checkrides," and 83% of respondents believed there were too few DPEs in their region. *Id.* ¶ 24. Wait times were inconsistent across the nation. *Id.* ¶ 25. The survey also showed that many DPEs are inactive, and 50% of all DPE exams are performed by just 200 examiners out of 935. *Id.* ¶ 24. Plaintiff asserts that the examiner-capacity problems are "particularly acute" in New England, where CFI-G practical testing is "effectively limited to one examiner." *Id.* ¶ 30.

The FAA has acknowledged that expanding examiner deployment may "strain . . . the DPE community." *Id.* ¶ 52. In December 2024, the FAA changed its policy with respect to scheduling practical tests. *Id.* ¶ 36.[5] At the same time, the FAA has failed to make Aviation Safety Inspectors available for practical examinations, and has primarily relied upon DPEs. *Id.* ¶ 21–22. The FAA also does not keep data to monitor DPE availability. *Id.* ¶ 23. Plaintiff further alleges that there is an ongoing pilot shortage that causes harm to airlines and the U.S. economy writ large. *Id.* ¶ 20.

Plaintiff seeks declaratory and injunctive relief, in addition to "nominal damages, and compensatory and punitive damages against individual defendants where constitutionally permissible." *Id.* at 26–28.

## II. MOTION TO DISMISS COUNTS ONE, TWO, AND FOUR

First, the Court addresses the motion to dismiss Counts One, Two, and Four filed by the FAA and its administrator Bryan Bedford, which argues that Plaintiff lacks standing to bring these counts. The Court agrees with Defendants on this point. Plaintiff also fails to state a claim on

[5] Plaintiff asserts that "the FAA replaced its binding two-week scheduling requirement (FAA Order 8900.2C, ¶ 92) with a non-binding 30-day "recommendation" (FAA Order 8900.1)." The Court notes that Paragraph 92 of FAA Order 8900.2C does not appear to impose a binding requirement; indeed, it does not appear to apply to DPE exams at all. *See* FAA Order 8900.2C ¶ 92 ("[I]f an FAA office is unable to schedule a flight instructor applicant who has completed training and is prepared to take the test with an ASI within two weeks from the date of the original request, then the Flight Standards division and FAA office managers are encouraged to approve the designation of a local [Flight Instructor Examiner] to give initial flight instructor practical tests.").

Count One, and fails to establish that the Court should exercise mandamus jurisdiction over Count Four.

A. Legal Standard

*1. Rule 12(b)(1)*

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a case for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Motions to dismiss for lack of Article III standing challenge the subject matter jurisdiction of a federal court and are properly brought under Rule 12(b)(1). *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020).

*2. Rule 12(b)(6)*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether

they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

These pleading standards apply to self-represented parties. Generally, a court must extend "special solicitude" to *pro se* litigants and ought to read their pleadings "to raise the strongest arguments that they suggest." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006)) (internal quotation marks omitted). However, "a lawyer representing himself ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). The Second Circuit has extended this rule to disbarred and suspended attorneys, like Plaintiff.[6] *See United States v. Piece*, 649 F. App'x 117, 117 n.1 (2d Cir. 2016) (summary order) (collecting Second Circuit cases); *Parent v. New York*, 485 F. App'x 500, 502–03 (2d Cir. June 18, 2012) (summary order) (denying special solicitude to suspended attorney proceeding *pro se*). The rationale for denying practicing lawyers special solicitude when they appear *pro se*—that they are "experienced in litigation and familiar with the procedural setting presented"—applies equally to disbarred or suspended attorneys. *Piece*, 649 F. App'x at 117 n.1 (quoting *Tracy*, 623 F.3d at 102). The Court therefore

[6] Plaintiff's bar license is currently administratively suspended. *See* Conn. Judicial Branch, Attorney Firm Look-up, https://lookup.jud.ct.gov/AttorneyFirm/JurisDetail?JurisNumber=309679 (last visited September 24, 2026).

does not afford Plaintiff the same level of special solicitude afforded other *pro se* plaintiffs, though it continues to construe his claims liberally, as it has in the past. *See Williams I*, 2024 WL 3292725, at *4.

B. Discussion

*1. Incorrect or Hallucinated Citations*

At the outset, the Court is compelled to note that Plaintiff's briefing appears to contain multiple incorrect or hallucinated citations. First, as Defendants note in their motion to stay discovery, ECF No. 84 at 7 n.4, Plaintiff's opposition to the motion to dismiss cites *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175, 193 (2023), as containing the following direct quote: "A litigant who has standing when his claim arises does not lose standing because an agency's final decision moots his claim." Pl.'s Opp. to Mot. to Dismiss, ECF No. 82 at 13. But neither that quotation, nor the subsequent citation to *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 189 (2000) appear in *Axon Enterprise*. Second, elsewhere in his opposition brief, Plaintiff attributes the following holding to the Supreme Court in *Axon Enterprise*: "where claims challenge 'the very framework of an agency's operations,' they cannot be 'inescapably intertwined' with merits-based orders because 'the injury is being subjected to the defective framework itself.'" ECF No. 82 at 10–11. None of the quoted language ("the very framework of an agency's operations," "inescapably intertwined," or "the injury is being subjected to the defective framework itself") appears in the *Axon Enterprise* opinion. Third, Plaintiff summarizes *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477 (2010) as holding that "plaintiffs challenging the constitutional structure of an agency have standing based on the structural defect itself." ECF No. 82 at 15. The Court can find no such holding in *Free Enterprise Fund*. Fourth, Plaintiff cites *McCarthy v. Madigan*, 503 U.S. 140, 148 (1992) as support for the proposition that "[w]here [a] challenge is to 'the constitutionality of the system itself,' the

administrative process is structurally incapable of providing remedy." ECF No. 82 at 5. The quoted language ("the constitutionality of the system itself") appears nowhere in *McCarthy*.

As described in the Notice to Counsel and Litigants Regarding AI-Assisted Research, issued by the Clerk of Court on September 12, 2025, "[a]ttorneys and pro se litigants alike should exercise great caution in submitting any AI-generated language in filings before the Court. Use of AI without verification of the accuracy of the information it generates–like any other shoddy research method from other sources or tools–implicates Federal Rule of Civil Procedure 11, the central purpose of which is to deter baseless filings in district court and thus to streamline the administration and procedure of the federal courts. Rule 11 applies fully to actions filed by pro se litigants . . . the Court has a no-tolerance policy for any briefing (AI-assisted or not) that hallucinates legal propositions or otherwise severely misstates the law. Such filings will often result in sanctions absent reasonable excuse. *See generally Willis v. U.S. Bank Nat'l Ass'n et al*, No. 3:25-CV 516-BN, 2025 WL 1408897 (N.D. Tex. May 15, 2025)."

This Court has indeed imposed sanctions for such conduct. *See*, *e.g.*, *Barteca Holdings LLC v. Tacobarn Newtown LLC*, No. 26-CV-250 (VDO), 2026 WL 2253785, at *6–7 (D. Conn. Aug. 4, 2026) (imposing monetary sanctions and referring attorney to grievance committee in response to the submission of unverified AI-generated legal authorities); *Cojom v. Roblen, LLC*, No. 3:23-CV-1669 (JCH), 2025 WL 3205930, at *4 (D. Conn. Nov. 17, 2025) (imposing monetary sanctions for the same); *Andre v. Warden, FCI Danbury*, 827 F. Supp. 3d 294, 313 (D. Conn. 2025) (striking *pro se* litigant's pleading, drafted by a third party and containing multiple fabricated AI-generated citations, with prejudice).

Thus, the Court will separately be issuing an Order to Show Cause requiring Plaintiff to show cause why sanctions should not be imposed for submission of briefing that hallucinates legal propositions and/or severely misstates the law.

*2. Standing*

Plaintiff, who seeks prospective declaratory and injunctive relief with respect to the FAA and Defendant Bedford in his official capacity, does not have standing to pursue Counts One, Two, and Four. Plaintiff does not assert an injury in fact with respect to the challenged claims, and even if he had, any such injury would not be redressable through the requested relief.

"Article III limits the federal judicial power to deciding 'Cases' and 'Controversies.' U.S. Const. art. III § 2. 'Under Article III, a case or controversy can exist only if a plaintiff has standing to sue,' meaning a personal stake in the outcome of the litigation." *Soule v. Connecticut Ass'n of Schs., Inc.*, 90 F.4th 34, 45 (2d Cir. 2023) (quoting *United States v. Texas*, 599 U.S. 670 (2023)). "[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not conjectural or hypothetical' . . . Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . traceable to the challenged action of the defendant . . . Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citation omitted). "A plaintiff must demonstrate standing for each claim he seeks to press" and "'for each form of relief'" that is sought. *DaimlerChrysler Corp. v. Cuno,* 547 U.S. 332, 352 (2006) (quoting *Laidlaw*, 528 U.S. at 185).

a. Injury

First, the Court finds that Plaintiff suffers no cognizable injury with respect to Count One (alleging Fifth Amendment systemic due process violations), Count Two (alleging Fifth Amendment equal protection violations), or Count Four (seeking mandamus relief).

A plaintiff seeking prospective declaratory and injunctive relief[7] cannot rely solely on past harms to satisfy Article III's injury requirement. "'[P]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)). Instead, a plaintiff who alleges past exposure to illegal conduct may pursue injunctive relief in one of two ways.

First, the plaintiff can allege a "sufficient likelihood of future injury." *Food and Drug Admin v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024). The threat of future injury can establish standing only "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks omitted); *Davis v. FEC*, 554 U.S. 724, 734 (2008) ("[P]rospective injury" must be "real, immediate, and direct."). "The Supreme Court has made clear that 'allegations of possible future injury' or even an 'objectively reasonable likelihood' of future injury is insufficient to confer standing." *Yankovich v. Applus Techs., Inc.*, 621 F. Supp. 3d 269, 274–75 (D. Conn. 2022) (quoting *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 300 (2d Cir. 2021).

---

[7] To the extent Plaintiff seeks nominal damages against the FAA or Bedford in his official capacity, such relief is barred by sovereign immunity. *See Galette v. New Jersey Transit Corp.*, 607 U.S. 509, 527 (2026) ("[A] damages claim against a state or federal officer in their official capacity is barred by sovereign immunity because the real party in interest is the government entity, not the named official") (cleaned up).

Second, a plaintiff may allege an injury-in-fact by pointing to "continuing, present adverse effects" of the past harm. *O'Shea*, 414 U.S. at 496; *see also Hamer v. JP Morgan Chase Bank, N.A. Long Term Disability Benefit Plan*, No. 3:23-CV-00832 (JCH), 2024 WL 5457448, at *4 (D. Conn. Mar. 28, 2024) ("[I]mminent threat of future injury is but one way to confer standing to pursue injunctive relief . . . A 'continuing violation' or a past injury accompanied by any 'continuing, present adverse effects' confers constitutional standing to seek injunctive relief.") (citing *Soule*, 90 F.4th at 49); *Janfeshan v. U.S. Customs & Border Prot.*, No. 16-CV-6915 (ARR) (LB), 2017 WL 3972461, at *7 (E.D.N.Y. Aug. 21, 2017) (finding injury-in-fact where plaintiff alleged he "continue[d] to experience adverse effects" as a result of Customs and Border Patrol "copying and retaining the digital contents of his phone").

i. Counts One and Four

The Court first concludes that Plaintiff fails to allege an injury-in-fact with respect to his due process and mandamus claims alleged in Counts One and Four.

In Count One, which asserts a "systemic due process violation" pursuant to the Due Process Clause of the Fifth Amendment, ECF No. 49-1 at 18, Plaintiff asserts that that the FAA suffers from a "longstanding" and worsening shortage of designated pilot examiners, denying applicants for flight certifications "meaningful access to administrative processes." *Id.* ¶¶ 48–49. Plaintiff asserts that he was denied due process of law because he was unable, despite diligent effort, to secure a CFI-G practical exam between October of 2022 and the expiration of his prerequisite certifications in July of 2023, despite an administrative order requiring scheduling within two weeks. *Id.* ¶¶ 32–35, 45. As a result, Plaintiff alleges that he has been unable, thus far, to become a certified flight instructor with a glider rating, "preventing him from contributing to aviation safety through instruction" and being able to utilize the scholarship he was awarded. *Id.* ¶¶ 43,

45–46. Count Four is based on the same facts as Count One: the FAA's alleged failure to maintain adequate testing capacity. Plaintiff petitions for a writ of mandamus, asserting that the FAA has failed to perform a statutory duty to "ensure an adequate number of designated pilot examiners are deployed and available to perform their duties." *Id.* ¶ 66.

With respect to Counts One and Four, Plaintiff does not assert any "certainly impending" future harm. For instance, Plaintiff does not allege any facts suggesting that he is presently seeking a CFI-G rating, or that he will certainly do so in the future. Thus, the Court cannot conclude that FAA's examination regime will cause Plaintiff future harm. *See Lujan*, 504 U.S. at 564 ("'[S]ome day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require."). Indeed, Plaintiff essentially admits in his operative complaint that he does not plan to seek flight instructor ratings in the future: he characterizes the FAA's "constitutional violations" as working "irreparable harm" that "ha[s] prevented him from contributing to aviation safety through instruction during his remaining active years." ECF No. 49-1 ¶ 43.[8] Accordingly, any alleged threat that Plaintiff will be subject to the challenged conduct in the future is too speculative to support his requests for injunctive and declaratory relief.

Nor has Plaintiff sufficiently pointed to "continuing, present adverse effects" of a past exposure to allegedly illegal conduct. To start, the Court rejects Plaintiff's theory that his "continuing aviation engagement proves ongoing injury." ECF No. 82 at 13. Setting aside that

[8] Plaintiff attempts to allege additional facts in his opposition to Defendants' motion to dismiss, asserting that he "reasonably expects" to pursue additional ratings requiring practical tests with DPEs in the future. ECF No. 82 at 13 ("Plaintiff is not a person who once wanted CFI-Glider, failed to get it, and moved on."). Plaintiff cannot amend his complaint through his opposition memorandum. *See Stancuna v. Town of Wallingford*, No. 3:25-CV-1752 (KAD), 2026 WL 1398511, at *2 n.2 (D. Conn. May 19, 2026) ("It is well-settled that a plaintiff cannot amend his pleadings via his opposition to a motion to dismiss") (citation and quotation marks omitted). And, as the Court has previously stated, even an "'objectively reasonable likelihood' of future injury is insufficient to confer standing" where the harm is not "certainly impending." *Yankovich*, 621 F. Supp. 3d at 274–75; *see also Susan B. Anthony List*, 573 U.S. at 158.

Plaintiff again attempts to amend his complaint through his opposition brief to assert additional facts about his pilot certificate and ratings, Plaintiff has not alleged how his failure to obtain a CFI-G rating impacts his existing credentials, if at all. Similarly, the fact that Plaintiff "was pursuing" the CFI-G and other ratings at unspecified times in the past has no impact on the standing analysis. *See Lujan*, 504 U.S. at 564 ("That the [affiants] 'had visited' the areas of the projects before the projects commenced proves nothing . . . the affiants' profession of an 'intent' to return to the places they had visited before—where they will presumably, this time, be deprived of the opportunity to observe animals of the endangered species—is simply not enough.").

Additionally, Plaintiff's allegations about the effects of the FAA's ongoing failure to maintain adequate examiner capacity, and its effect on the national economy, are generalized grievances that do not support Article III standing. *See Lujan*, 504 U.S. at 573–74 (a plaintiff "raising only a generally available grievance about government," claiming "harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large," lacks standing). Plaintiff contends that that the FAA's failure to make available a sufficient quantity of designated pilot examiners has led to a nationwide pilot shortage, which in turn contributes to "flight delays, cancellations, and diminished connectivity," causing "substantial . . . losses" to the national economy. ECF No. 49-1 ¶¶ 15, 20. These allegations about present or worsening examiner shortages, *see* ECF No. 82 at 21, do not establish Plaintiff's standing absent an allegation that Plaintiff will be imminently harmed by such shortages.

Finally, Plaintiff theorizes that he suffered a "procedural injury" conferring standing. *See id.* at 16 (citing *Lujan*, 504 U.S. at 572 n.7). To be sure, *Lujan* recognized that a "person who has been accorded a procedural right to protect his concrete interests can assert that right without

meeting all the normal standards for redressability and immediacy." *Lujan*, 504 U.S. at 572 n.7. But in the next breath, the *Lujan* Court explicitly rejected the notion that the injury-in-fact requirement could be "satisfied by congressional conferral upon *all* persons of an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law." *Id.* at 573. *Lujan* thus distinguished between a plaintiff who seeks to enforce a procedural right to protect his "concrete interests" and a plaintiff who raises "only a generally available grievance about government." *See id.* at 573 & n.8 (rejecting the notion that the violation of a certain procedural duty, "unconnected to the plaintiff's own concrete harm," can satisfy the concrete injury requirement). Like the plaintiffs in *Lujan*, Plaintiff here falls into the latter category: he has not identified a "separate concrete interest" that is impaired by the FAA's alleged failure to follow the law. *See id.* at 572. *Lujan*'s discussion of "procedural" injuries did not endorse a more expansive view of standing; it merely restated existing principles. Its discussion thus has no impact on the Court's conclusion that Plaintiff fails to state a cognizable injury-in-fact with respect to Counts One and Four.[9]

ii. <u>Count Two</u>

The same is true of Count Two, which alleges equal protection violations under a selective enforcement theory.

In Count Two, Plaintiff asserts only "past exposure to [allegedly] illegal conduct" that does not support standing. *See Lyons*, 461 U.S. at 102. Plaintiff alleges that he petitioned the FAA for a one-year extension of the validity of his knowledge test, and that his petition was intentionally subjected to discriminatory processing delays. *Id.* ¶¶ 37–38; 55 ("The FAA processed Plaintiff's

[9] Plaintiff does not assert that his inability to volunteer as a flight instructor with a CFI-G certification is a "continuing, present adverse effect" of illegal action that supports a finding of injury-in-fact. *Cf. Lyons*, 461 U.S. at 102. Accordingly, the Court does not address such an argument.

exemption petition in 535 days—186 days longer than any comparable petition"). Plaintiff further alleges that while the petition was in processing, and after Plaintiff filed a lawsuit challenging agency scheduling delays, FAA officials initiated a retaliatory "collateral investigation" into Plaintiff's medical fitness. *Id.* ¶ 39.

Plaintiff does not assert any continuing injury in Count Two: he does not assert that either petition processing or the medical investigation remains ongoing, nor does he allege that the processing delays had any impact on his eventual failure to achieve the CFI-G rating. He alleges that the FAA currently maintains "irrational categorical distinctions" between CFIs and DPEs, ECF No. 49-1 ¶ 31, but does not connect that allegation to any personal ongoing harm in any way.

In his opposition brief, Plaintiff appears to concede that he has asserted only past injuries, and instead argues that "past discrimination supports declaratory relief" under *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). *See* ECF No. 82 at 8, 23. Plaintiff's position is based on a clearly incorrect reading of that case. *Olech* did not even mention standing principles, much less overrule the Supreme Court's standing jurisprudence; it recognized "class-of-one" equal protection claims, a concept entirely irrelevant to the threshold jurisdictional inquiry required in this matter. *Olech*, 528 U.S. at 564–65.

Finally, Plaintiff also does not assert any "certainly impending" future harm with respect to Count Two. Although he alleges that Defendants "implement[ed] discriminatory processing procedures evidenced by statistical disparities," *id.* ¶ 41, he does not even attempt to assert that such procedures will affect him in the future.

Accordingly, the Court finds that Plaintiff has failed to allege injury-in-fact with respect to Counts One, Two, and Four.

b. Redressability

Even if the Court were to assume that Plaintiff had adequately alleged a cognizable injury-in-fact with respect to Counts One, Two, and Four, none of the purported injuries he asserts on his own behalf (as opposed to on behalf of third parties) are redressable by the requested relief.

Redressability refers to a "non-speculative likelihood that the injury can be remedied by the requested relief." *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008). A plaintiff's injury is redressable "if the relief sought can compensate the plaintiff for his losses or 'eliminate any effects' caused by a defendant's challenged conduct." *Janfeshan*, 2017 WL 3972461, at *6 (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 105–06 (1998)). That is not the case here.

Plaintiff repeatedly and emphatically states he *does not* seek to relitigate any specific administrative action in this case, but rather challenges "structural" derogations of responsibility affecting all applicants for FAA certifications and ratings. *See*, *e.g.*, ECF No. 49-1 ¶¶ 20–30; ECF No. 82 at 22 ("Plaintiff's standing rests on structural constitutional violations that exist independently of any individual test eligibility"). Plaintiff's requested remedies are consistent with this position: to the extent he attempts to assert a cognizable continuing *personal* injury, he does not seek to relieve it. For instance, he does not ask the Court to order the FAA to retroactively grant his CFI-G certification or extend the validity of his knowledge test. Rather, Plaintiff seeks declaratory and injunctive relief directed at changing FAA policy moving forward. Plaintiff has framed his challenge such that he "'is not himself the object of the government action or inaction he challenges,'" making the redressability element of standing "'substantially more difficult to establish.'" *Neuro. Surgery Prac. of Long Island, PLLC v. United States Dep't of Health & Hum. Servs.*, 145 F.4th 212, 225 (2d Cir. 2025) (quoting *Lujan*, 504 U.S. at 562).

As relevant to Counts One and Four, Plaintiff asks the Court to issue two declarations regarding the legality of the FAA's past conduct. *See* ECF No. 49-1 at 27 (requesting that the Court declare that "the FAA's maintenance of inadequate examiner capacity despite available solutions and Congressional mandate violates Fifth Amendment due process" and that "the FAA has failed to perform its clear statutory duty under § 319 of the FAA Reauthorization Act of 2018").[10] He further requests that the Court issue injunctions ordering Defendants "to ensure constitutionally adequate access to required practical tests within regulatory timeframes, including by maintaining examiner capacity through reasonable measures within their discretion, such as ASI-administered testing when DPE capacity proves insufficient, and by implementing regulatory or policy measures consistent with constitutional requirements and Congressional mandate to remedy systemic examiner capacity deficiencies, as required by statute and regulation," "to comply with their statutory obligations under § 319 of the FAA Reauthorization Act of 2018," and to refrain from "discriminatory processing procedures and retaliatory investigations." *Id.* at 27–28. None of the requested relief would bestow upon Plaintiff his CFI-G certification; Plaintiff would still need to engage in the standard qualification and testing process. *See Angel Luis Rodriguez, Jr. individually & on behalf of all others similarly situated, Plaintiff, v. Dealertrack Sys., Inc., Defendant.*, No. 2:24-CV-05084 (NJC) (AYS), 2026 WL 2660675, at *20 (E.D.N.Y. Sept. 10, 2026) (finding redressability element unsatisfied where "the requested declarations are backward-looking statements about [Defendant's] alleged past unlawful conduct").

---

[10] Plaintiff also requests a declaration that, moving forward, "Defendants must ensure constitutionally adequate access to required practical testing, including the obligation to provide ASI-administered tests when DPE access is not reasonably available within regulatory timeframes." *Id.* This is functionally a request for injunctive, rather than declaratory relief—and indeed, is duplicative of one of Plaintiff's subsequent requests for injunctive relief on the same page of the operative complaint. *See id.*

Similarly, even if Plaintiff had asserted any cognizable present or impending injury with respect to Count Two, the requested relief would not redress it. As relevant to Count Two, Plaintiff requests a declaration that "individual defendants' discriminatory processing patterns violate Fifth Amendment equal protection" and an injunction "[p]rohibit[ing] discriminatory processing procedures and retaliatory investigations." ECF No. 49-1 at 27–28. These requests fare no better than those relating to Counts One and Four, as they would not remedy any personal injury Plaintiff claims to have suffered.

c. Plaintiff's Other Theories of Standing

The additional theories set forth in Plaintiff's opposition to Defendants' motion to dismiss do not impact the Court's standing analysis.

First, the fact that Plaintiff seeks to challenge perceived structural defects in the FAA's procedures for conducting practical tests and processing exemption petitions does not excuse Plaintiff from compliance with the jurisdictional requirements of Article III standing. *See Davis*, 554 U.S. at 733 ("the requirement that a claimant have 'standing is an essential *and unchanging* part of the case-or-controversy requirement of Article III'") (quoting *Lujan*, 504 U.S. at 650) (emphasis added). Plaintiff's opposition to the motion to dismiss repeatedly indicates that he challenges alleged "structural constitutional defects existing independently of any individual administrative decision." ECF No. 82 at 4. Plaintiff posits that different types of claims "have different standing requirements," and that the nature of his challenge confers "structural standing" pursuant to a framework purportedly established in *Free Enterprise Fund* and *Axon Enterprise, Inc.*. *See* ECF No. 82 at 8, 12 (referencing "different standing requirements"); *id.* at 15, 23 (referencing "structural standing"); *id.* at 38 ("Defendants' argument that Plaintiff must remain perpetually eligible for a practical test to maintain standing would effectively bar all structural challenges").

Plaintiff is incorrect. No federal court of which this Court is aware has ever recognized a doctrine or framework by the name of "structural standing." And neither *Free Enterprise Fund* nor *Axon Enterprise* set forth any meaningful contributions to the doctrine of standing.[11] Rather, these cases stand for the principle that specialized statutory review schemes, promulgated by Congress to govern the adjudication of individual claims by federal agencies, do not always displace district court jurisdiction over agency decisions. *See Axon Enterprise*, 598 U.S. at 184–86; *Free Enter. Fund*, 561 U.S. at 489 (quoting *Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 212–213 (1994)). Plaintiff's assertion that *Free Enterprise Fund* somehow confers standing over all structural challenges to agency operation is belied by the Supreme Court's explicit finding that the plaintiff in that matter had standing on grounds having nothing to do with the "structural" nature of its challenge. *See Free Enter. Fund*, 561 U.S. at 512 n.12. And in *Axon Enterprise*, the plaintiffs were subject to active administrative enforcement action by the agencies they challenged—such that standing was obvious. Here, Defendants do not move to dismiss on the basis that the Court's jurisdiction over this matter has been displaced by a special statutory review scheme—and the Court does not rest its dismissal on such reasoning.[12] Thus, *Axon Enterprise*, *Free Enterprise Fund*, and *Thunder Basin* are entirely inapposite to this case. Plaintiff is not excused from compliance with the requirements of the "irreducible constitutional minimum" of standing. *See Lujan*, 504 U.S. at 560.

Presumably in the alternative to his argument that he should be released from the obligation to demonstrate standing, Plaintiff argues he need not show a concrete injury under the "structural

---

[11] *Free Enterprise Fund* relegates the issue to a footnote. *See Free Enter. Fund*, 561 U.S. at 512 n.12.

[12] Plaintiff purports to quote Defendants' motion to dismiss in asserting that Defendants "argue Plaintiff lacks standing here because administrative processes 'remain under appellate review.' ECF 73-1 at 13-14." ECF No. 82 at 20. The Court cannot locate any such argument in Defendants' motion. And, indeed, as Defendants point out, the quoted language does not appear in Defendants' motion to dismiss. *See* ECF No. 92 at 2 n.1.

standing framework" he believes was imposed by *Free Enterprise Fund*, 561 U.S. at 490–91. Just as this imagined framework does not eliminate the standing requirement wholesale, it also does not support the notion that a "structural defect" in the FAA's testing regime "violates due process regardless of whether Plaintiff personally can take a test today." *Cf.* ECF No. 82 at 15. Neither *Free Enterprise Fund* nor any other case on which Plaintiff relies stands for the principle that "[a] system's inadequacy, [rather than] any individual decision within that system," grants standing to an individual in Plaintiff's position. *Cf. id.* at 15–16.[13] This concept thus does not change the Court's finding with respect to the injury requirement.

The Court has considered the rest of the arguments asserted in response to the motion to dismiss for lack of standing and finds that they are without merit. And having concluded that Plaintiff lacks Article III standing to pursuant Counts One, Two, and Four, it need not reach Defendants' prudential standing arguments. Accordingly, the Court concludes it lacks subject matter jurisdiction over Counts One, Two, and Four.

*3. Mandamus Jurisdiction (Count Four)*

Even if Plaintiff had demonstrated standing as to Count Four, he fails to establish that the Court has jurisdiction to issue a writ of mandamus with respect to § 319 of the FAA Reauthorization Act of 2018.

The Mandamus Act provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Mandamus is an "extraordinary remedy, intended to aid only those parties to whom an official or agency owes 'a

[13] Indeed, this concept runs headlong into *Lujan*'s insistence that even plaintiffs asserting "procedural injuries" must identify concrete injuries. *Lujan*, 504 U.S. at 572 n. 7.

clear nondiscretionary duty.'" *Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) (citation omitted).

To obtain relief under the Mandamus Act, a plaintiff must establish that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008). A district court's decision not to exercise jurisdiction under the mandamus statute is a discretionary one. *Franchi v. Manbeck*, 972 F.2d 1283, 1289 (Fed. Cir. 1992). And the exercise of mandamus jurisdiction is "inappropriate" with respect to statutes that do not involve a "plainly defined and peremptory" or "clear nondiscretionary duty." *See Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989); *Cunningham v. Loy*, 76 F. Supp. 2d 218, 220 (D. Conn. 1999) (the exercise of discretionary jurisdiction in an action requesting mandamus "is available only where the defendant owes the plaintiff a clear, ministerial and nondiscretionary legal duty").

Section 319 does not impose a "plainly defined and peremptory" or a "clear nondiscretionary duty" upon the FAA Administrator. *Cf. Anderson*, 881 F.3d at 5. Section 319 of the FAA Reauthorization Act of 2018 provides:

> (a) IN GENERAL.—The Administrator shall assign to the Aviation Rulemaking Advisory Committee (in this section referred to as the ''Committee'') the task of reviewing all regulations and policies related to designated pilot examiners appointed under section 183.23 of title 14, Code of Federal Regulations. The Committee shall focus on the processes and requirements by which the FAA selects, trains, and deploys individuals as designated pilot examiners, and provide recommendations with respect to the regulatory and policy changes necessary to ensure an adequate number of designated pilot examiners are deployed and available to perform their duties. The Committee also shall make recommendations with respect to the regulatory and policy changes if necessary to allow a designated pilot examiner perform a daily limit of 3 new check rides with no limit for partial check rides and to serve as a designed pilot examiner without regard to any individual managing office.
> (b) ACTION BASED ON RECOMMENDATIONS.—Not later than 1 year after receiving recommendations under subsection (a), the Administrator

> shall take such action as the Administrator considers appropriate with respect to those recommendations.

FAA Reauthorization Act of 2018, PL 115-254 (Oct. 5, 2018).

Plaintiff's complaint misconstrues and misquotes § 319. *See* ECF No. 49-1 ¶ 66 ("Section 319 of the FAA Reauthorization Act of 2018 creates a clear, non-discretionary duty using mandatory language: The Administrator 'shall ensure an adequate number of designated pilot examiners are deployed and available to perform their duties.'"). The purportedly quoted language does not appear in the statute, which instead requires that the Aviation Rulemaking Advisory Committee ("Committee") "shall . . . *provide recommendations* with respect to the regulatory and policy changes necessary to ensure an adequate number of designated pilot examiners are deployed and available to perform their duties." PL 115-254, § 319(a). In the following section, the statute directs that the Administrator "shall take such action as the Administrator considers appropriate" with respect to the Committee's recommendations within one year of receiving them. *Id.* § 319(b).

Section 319 does not impose a mandatory duty on the FAA Administrator to deploy an adequate number of designated pilot examiners, as Plaintiff suggests. Rather, in directing the Administrator to "take such action as the Administrator considers appropriate," *id.*, the plain language of the statute grants the Administrator discretionary authority to implement, or not implement, any Committee recommendations. To the extent Plaintiff argues that the statute imposes a requirement to *act*, one way or another, on the Committee's recommendations, the language of the statute does not support that reading. Courts have found a clear nondiscretionary duty to take action, for example, in the Clean Water Act's requirement that "the [EPA] Administrator shall either approve or disapprove" of lists submitted by states, and in the Administrative Procedure Act's requirement that "each agency shall conclude a matter presented to it 'within a reasonable time.'" *See Nat. Res. Def. Council, Inc. v. Fox*, 909 F. Supp. 153, 159

(S.D.N.Y. 1995); *Zhi He v. Chertoff*, No. 2:07-CV-14, 2007 WL 2572359, at *5 (D. Vt. Sept. 4, 2007) (quoting 5 U.S.C. § 555). In § 319, by contrast, the FAA Administrator is directed to take "such action as the Administrator considers appropriate," which includes taking no action at all. Plaintiff cites no authority supporting his contrary position. And even if the statute *did* impose a duty upon the Administrator to act, one way or another, it certainly does not impose a duty to implement any reforms, much less Plaintiff's chosen reforms.[14]

Accordingly, the Court declines to exercise jurisdiction over Plaintiff's claim under the Mandamus Act, Count Four.

*4. Failure to State a Claim (Count One)*

Finally, even if Plaintiff *had* demonstrated standing as to Count One, he fails to state a claim.[15]

Plaintiff fails to state a plausible claim for relief under the Fifth Amendment's Due Process Clause. A procedural due process claim has two elements: "(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process." *Bryant v. N.Y. State Educ. Dep't,* 692 F.3d 202, 218 (2d Cir. 2012). Plaintiff's claim fails at the first element.

Plaintiff claims that "(1) his property interest in existing FAA certificates and ratings; (2) his liberty interest in pursuing his chosen profession of flight instruction; and (3) his liberty interest in engaging in interstate travel and commerce through aviation" are protected under the Due Process Clause and have been infringed by Defendants' conduct. ECF No. 49-1 ¶ 45. He further

[14] Plaintiff's complaint further claims, rather vaguely, that § 319 "required implementation of reforms by 21 June 2020," ECF No. 49-1 ¶ 37, but § 319 makes no mention of any required reforms (nor does it describe what such reforms might consist of).

[15] Defendants do not seek to dismiss Count Two for failure to state a claim. Accordingly, the Court rests its dismissal of Count Two solely on its holding that Plaintiff does not have standing to bring it.

suggests that his role as a flight instructor carries an "educational speech interest" that is likewise violated by "the FAA's systemic failures." *Id.* ¶ 46. He is incorrect on all counts.

First, assuming, without deciding, that Plaintiff may have a property interest in his existing FAA certificates and ratings, he has not asserted that Defendants' actions have deprived him of that interest. Plaintiff does not allege that the FAA has taken any action with respect to any of his existing licenses. Thus, there has been no deprivation of any property interest. *See*, *e.g.*, *Parsons v. Pond*, 126 F. Supp. 2d 205, 216 (D. Conn. 2000) ("Parsons . . . has not alleged or set forth facts to establish that he was deprived of his license and therefore his property interest in that license."), *aff'd*, 25 F. App'x 77 (2d Cir. 2002). To the extent Plaintiff attempts to suggest he has a present property interest in a CFI-G rating, he does not. "'[A] plaintiff must have a property interest in a benefit that is 'more than an abstract need or desire for it . . . He must, instead, have a legitimate claim of entitlement to it' under state or federal law in order to state a' procedural due process claim." *Id.*, 126 F. Supp. 2d at 217 (quoting *Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996)). Plaintiff has never held all of the qualifications required to obtain a CFI-G rating, and thus has no legitimate claim of entitlement to one.

Second, Plaintiff's fundamental right to interstate travel is not affected by his lack of a CFI-G rating. There is no such thing as a fundamental liberty interest in "engaging in interstate travel and commerce through aviation." *Cf.* ECF No. 49-1 ¶ 45. The constitutional right to travel "prohibits the erection of actual barriers to interstate movement." *Lai v. New York City Gov't*, 991 F. Supp. 362, 366 (S.D.N.Y.), *aff'd,* 163 F.3d 729 (2d Cir. 1998). But Plaintiff's inability to volunteer as a flight instructor is certainly not an "actual barrier to interstate movement." A person's right to travel does not amount to the right to choose a particular mode of transportation. *See, e.g.*, *Brickle v. New York*, No. 26-CV-0373 (LLS), 2026 WL 836692, at *4 (S.D.N.Y. Mar.

26, 2026) ("[c]ourts routinely reject interstate travel claims based" on the theory "that enforcement of . . . license suspensions violate the constitutional right to free movement"). This Court cannot locate authority suggesting that the right to travel encompasses the right to pilot a glider between states (as opposed to flying as a passenger or using ground transportation). The notion that the right to travel encompasses the right to *teach others* how to pilot a glider is even more far-fetched.

Third, Plaintiff has no protected liberty interest in pursuing his chosen volunteer work that is burdened by his lack of a CFI-G rating. The Court is not aware of any authority in this Circuit finding that infringement of the ability to pursue volunteer work—as opposed to pursuing gainful employment or "one's livelihood"—constitutes infringement of a liberty interest. *Cf. Parsons*, 126 F. Supp. 2d at 216–17 (citing cases acknowledging that an individual may have a liberty interest in the pursuit of his livelihood). Plaintiff certainly does not cite to any such authority. Even if the Court considered Plaintiff's desired volunteer work to be analogous to a professional pursuit, Plaintiff has asserted no facts suggesting he is completely prevented from participating in volunteer aeronautical instruction, as might support a finding that Defendants have infringed his right to pursue the profession of his choice. *See Doe by & through Boyd v. Smereczynsky*, No. 3:16-CV-00394 (MPS), 2018 WL 4266084, at *7 (D. Conn. Sept. 6, 2018) ("While a person's right to pursue the profession of his choice is recognized as a constitutionally protected liberty interest, courts in the Second Circuit have consistently held one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest."); *Dixon v. United States*, No. 14-CV-960 KMK, 2015 WL 851794, at *12 (S.D.N.Y. Feb. 27, 2015) ("The mere inability to obtain certain jobs, as compared to being barred from one's chosen line of work, does not constitute continuing legal harm."). Indeed, the operative complaint indicates that Plaintiff is currently an aviation instructor. ECF No. 49-1 ¶ 9 ("Plaintiff . . . is a Commercial Pilot

and Certified Ground Instructor"); *id.* ¶ 46 ("Plaintiff's role as a flight instructor involves teaching and disseminating aeronautical knowledge"). Plaintiff has not met his burden of demonstrating that his asserted interest in CFI-G flight instruction is a protected liberty interest.

Finally, limiting Plaintiff's opportunities for "teaching and disseminating aeronautical knowledge" does not burden his "expressive activity protected under the First Amendment." *Cf. id.* ¶ 46. While it is well-established that the "general right to academic freedom" is protected by the First Amendment in the university context, *Radolf v. Univ. of Conn.,* 364 F. Supp. 2d 204, 215 (D. Conn. 2005), Plaintiff does not point to any authority suggesting that "speech on technical" and highly regulated subjects such as flight instruction, or "disseminating aeronautical knowledge," implicates the First Amendment right to academic freedom. *See* ECF No. 49-1 ¶ 46; ECF No. 82 at 25; *cf. Heim v. Daniel*, 81 F.4th 212, 234 (2d Cir. 2023) (referencing "First Amendment principles supporting a *university's* academic freedom") (emphasis added). Regardless, a person's interest in holding a particular teaching position is not a free speech interest. *The Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 575 n.14 (1972) ("Whatever may be a teacher's rights of free speech, the interest in holding a teaching job at a state university, simpliciter, is not itself a free speech interest.").

Accordingly, Count One fails to state a cognizable due process claim.

5. *Plaintiff's Proposed Sur-Reply*

Finally, the Court denies Plaintiff's motion for leave to file a sur-reply, ECF No. 93, and does not consider the proposed sur-reply in resolving Defendants' motion to dismiss. The Court finds that there is not good cause for further briefing beyond Defendants' reply.

Plaintiff requests leave to file a sur-reply on the basis that "Defendants' reply makes a 180-degree reversal from their motion to dismiss." ECF No. 93 at 1. As Plaintiff tells it, Defendants moved to dismiss because the Court "lacks subject matter jurisdiction under the APA's statutory

review scheme," then in reply "introduce[d] an entirely new argument: that Plaintiff lacks Article III standing under *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)." *Id.* at 1–2.

Plaintiff is flatly incorrect. Defendants explicitly moved to dismiss on the basis that Plaintiff lacks Article III standing. *See* ECF No. 73 at 10–14; 17–20. They did not advance an argument that the Court lacked subject-matter jurisdiction under the APA. It was Plaintiff who, in opposition to the motion to dismiss, characterized Defendants' argument as inappropriately "apply[ing] APA-standing rules" (apparently seeking to distinguish his claims from those challenging particular administrative actions taken by the FAA). *See* ECF No. 82 at 8.

Plaintiff's opposition to the motion to dismiss and motion for leave to file a sur-reply suggest that Plaintiff did not carefully read Defendants' motion—or otherwise intentionally distorted it to afford himself the opportunity to advance his "structural standing" arguments. Further, Plaintiff himself acknowledged in his opposition that Defendants' motion to dismiss argued he lacked standing under *Lujan*, rendering his professed shock and indignation less believable. *See* ECF No. 82 at 5 ("Defendants . . . apply *Lujan* as if this challenged individual agency action (it does not)").

Thus, the Court denies Plaintiff's motion for leave to file a sur-reply brief as to Defendants' motion to dismiss.

## III. MOTION TO STAY DISCOVERY

Defendants' motion to stay discovery pending resolution of the motion to dismiss, ECF No. 84, is denied as moot, as the motion to dismiss has now been resolved.

## IV. MOTION TO COMPEL

Plaintiff moves to compel responses to two sets of discovery requests served on June 27, 2025, pursuant to the Third Amended Complaint, and on August 28, 2025, pursuant to the

presently operative complaint. *See* ECF No. 87. The Court grants the motion in part, with respect to Request 3 in the first set of Requests for Production and Requests 2, 4, and 10 in the second set of Requests for Production. The motion is otherwise denied.

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *N. Shore-Long Island Jewish Health Sys., Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 47 (E.D.N.Y. 2018). "Once there is a showing of relevance, then the party withholding discovery on the grounds of burden, expense, privilege, or work product bears the burden of proving the discovery is in fact privileged or work product, unduly burdensome and/or expensive." *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 580 (E.D.N.Y. 2024) (citation and quotation marks omitted). If a party objects to discovery requests, that party bears the burden of showing why discovery should be denied. *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 314 F.R.D. 85, 87 (S.D.N.Y. 2016). Specifically, the resisting party must show how "'each request is not relevant, or how each request is overly broad, burdensome, or oppressive, by submitting affidavits or offering evidence revealing the nature of the burden.'" *Id.* at 88 (quoting *Sokol v. Wyeth, Inc.*, No. 07-CV-8442 (SHS) (KNF), 2008 WL 3166662, at *3 (S.D.N.Y. Aug. 4, 2008). And in determining whether discovery is proper under Rule 26, courts should consider "such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses." *C.K. through P.K. v. Bassett*, No. 22-CV-1791 (BMC) (JMW), 2023 WL 4086333, at *3 (E.D.N.Y. June 20, 2023).

A brief description of the procedural history of this motion is necessary. Plaintiff served his First Requests for Production, seeking five categories of documents, on June 27, 2025. ECF No. 87-1 at 4–5. Defendants objected to all of the requests on July 24, 2025. *Id.* at 5. Plaintiff served his Second Requests for Production, seeking thirteen categories of documents, on August 28, 2025. *Id.* The Court issued a partial stay of the case for the duration of the lapse in federal appropriations, October 2, 2025, to December 9, 2025. *Id.* at 6. Defendants served supplemental objections to Plaintiff's first set of discovery requests and objections to his second set of requests on December 15, 2025. Defs.' Supp. Obj. to Pl.'s First Set of Requests for Production, ECF No. 87-2; Defs.' Obj. to Pl.'s Second Set of Requests for Production, ECF No. 87-3.

Plaintiff's motion to compel was filed on January 30, 2026, past the 30-day deadline imposed by the Scheduling Order. Scheduling Order, ECF No. 76 at 2. Thus, the motion was untimely, and it was also lengthier than permitted by the Local Rules. The Court directed Plaintiff to refile a shorter memorandum of law. Order, ECF No. 86. The Court rejects Plaintiff's suggestion that the Order at ECF No. 86 extended Plaintiff's deadline to file a motion to compel, *see* ECF No. 76 at 2 ("Failure to file a timely motion in accordance with this scheduling order constitutes a waiver of the right to file a motion to compel"), but finds that it is in the interests of justice and efficiency to resolve the motion to compel on its merits, regardless. The parties have been unable to reach agreement regarding Plaintiff's discovery requests, and there is no indication that they will be able to do so without Court intervention. The Court thus considers the merits of Plaintiff's discovery requests and Defendant's objections.

Only Counts Three and Five are relevant for the purposes of this motion, as they are the only counts that have not been dismissed. In Count Three, Plaintiff asserts that the Doe Defendants are liable in their individual capacities because they "violated Plaintiff's constitutional rights

through specific decisions including: (a) discriminatory processing delays exceeding standards by 300-400% without justification; (b) retaliatory investigation authorizations triggered by litigation activity rather than safety concerns, violating Plaintiff's First Amendment right to petition for redress and Fifth Amendment due process protections; and (c) policy changes designed to avoid legal accountability during pending litigation." ECF No. 49-1 ¶ 59. Count Five, which asserts that Defendants violated their FOIA obligations by failing to respond to Plaintiff's May 6, 2025, request within the twenty-day statutory timeframe, is identical to the FOIA claim asserted in the Third Amended Complaint. *Compare* ECF No. 44-1 ¶¶ 51–54 *with* ECF No. 49-1 ¶¶ 70–73.

The Court considers the motion to compel in light of Defendants' letter to Plaintiff dated March 12, 2026, which provided some of the information sought in Plaintiff's requests, including the identifies of various Doe Defendants. Defs.' Letter, ECF No. 107-1.

A. First Set of Requests for Production

With respect to the first set of requests for production, Plaintiff's motion is denied as to Requests 1, 2, 4, and 5, and granted as to Request 3.

Requests 1 and 2 are denied as irrelevant, overbroad, and disproportionate to the needs of the case. Request 1, seeking "[a]ll documents and communications from 15 November 2023 through the present concerning Plaintiff's exemption petition," Pl.'s First Request for Production of Documents, ECF No. 84-1 at 3, is overbroad and disproportionate to the needs of the case. In the remaining live counts, Plaintiff challenges processing delays and the alleged initiation of a retaliatory medical investigation, not the denial of the exemption petition itself. Request 2, seeking "[a]ll documents or materials relied upon, consulted, referenced, or reviewed in connection with the FAA's decision to deny Plaintiff's exemption petition," *id.*, is even further afield of the allegations in Count Three. Additionally, a request for materials not only "relied upon," but also those "consulted, referenced, or reviewed," would impose a disproportionate burden on

Defendants, particularly given that the decision to deny the petition is irrelevant to Count Three. Plaintiff may make more tailored requests seeking information about the circumstances of the delay and the medical investigation (and indeed, he does so in the second set of requests for production).

Requests 3, 4, and 5 pertain to Count Five, which alleges violations of FOIA. In FOIA actions, "discovery is 'extremely limited' and 'permissible only with regard to the scope of the agency's search, its indexing and classification procedures, and other related factual matters.'" *Immerso v. U.S. Dep't of Lab.*, No. 19-CIV-3777 (NGG) (VMS), 2020 WL 8996744, at *3 (E.D.N.Y. Mar. 2, 2020), *aff'd*, No. 20-4064, 2022 WL 17333083 (2d Cir. Nov. 30, 2022). Request 3, which seeks "[e]mail server log entries, delivery records, or transmission metadata showing receipt or attempted receipt of Plaintiff's FOIA request submitted via email on 6 May 2025 at 09:46 EDT," ECF No. 84-1 at 3, appears to seek only to confirm whether the FAA received Plaintiff's FOIA request. It thus falls into the category of discovery relating to "factual matters." *Immerso*, 2020 WL 8996744, at *3.

But Request 4, seeking "[a]ll documents, records, or correspondence reviewed, compiled, or located in connection with Plaintiff's FOIA request dated 6 May 2025, whether or not disclosed," ECF No. 84-1 at 4, goes beyond permissible discovery topics in FOIA actions. All "documents . . . located in connection with Plaintiff's FOIA request" could reasonably include documents responsive to the FOIA request itself. *Immerso*, 2020 WL 8996744, at *3 ("A plaintiff cannot, through discovery, seek disclosure of documents that are the subject of the FOIA action.").

Request 5, which seeks "[a]ll records reflecting the FAA's internal handling, processing, prioritization, delay, or deferral of action in response to Plaintiff's FOIA request dated 6 May 2025," ECF No. 84-1 at 4, is irrelevant to Plaintiff's FOIA claim. The operative complaint alleges

that Defendants violated 5 U.S.C. § 552(a)(6)(A)(i) by not responding to the FOIA request within 20 business days, and the injury alleged is that he failed to receive the documents he sought. Under 5 U.S.C. § 552(a)(6)(A)(i), an agency is required to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of . . . such determination and the reasons therefor." Although "agencies have had difficulty meeting the FOIA deadline since it was added in 1974," Congress has "insisted that agencies adhere to the strict timetable and has provided requesters a private right of action when the agency fails to perform its statutory duty." *Am. Ctr. for Law and Justice v. U.S. Dep't of State*, 289 F. Supp. 3d 81, 87 (D.D.C. 2018). When this occurs, "the 'penalty' is that the agency cannot rely on the administrative exhaustion requirement to keep cases from getting into court." *Id.* (quoting *Citizens for Responsibility & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013)). Plaintiff alleges that the FAA's failure to respond to his request within the statutory timeframe "creates a live claim . . . for constructive exhaustion." ECF No. 49-1 ¶ 42. But discovery related to constructive exhaustion is irrelevant, because, if a plaintiff does not receive a response by the statutory deadline—which the Court treats as undisputed here—"then by operation of statute, he constructively exhausted his administrative requirements." *Bloomgarden v. U.S. Dep't of Justice*, 10 F. Supp. 3d 146, 152 (D.D.C. 2014); *Kleinert v. Bureau of Land Mgmt.*, No. 14-CV-1506 (JDB), 2015 WL 12964655, at *1 (D.D.C. Apr. 17, 2015) (denying discovery related to constructive exhaustion issue). Indeed, Plaintiff's own complaint asserts that he has "exhausted administrative remedies, including constructive exhaustion." ECF No. 49-1 ¶ 73. Put simply, the agency's failure to comply with the 20-day deadline is relevant only to exhaustion, not to the ultimate claim: that Plaintiff failed to receive the documents he seeks. Thus, information relating

to the processing of Plaintiff's request, including delay or deferral of action, is not relevant Count Five.[16]

B. Second Set of Requests for Production

With respect to the second set of requests for production, Plaintiff's motion is denied as to Requests 1, 3, 5, 6, 7, 8, 9, 11, 12, and 13 and granted as to Requests 2, 4, and 10.

As an initial matter, the Court's analysis considers whether, pursuant to Fed. R. Civ. P. 26(b)(1), the information sought is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The fact that Plaintiff described his second set of requests for production as seeking only information necessary to "identify individual decision-makers and establish their personal involvement in constitutional violations," ECF No. 84-2 at 2–3—while certainly a gross understatement of the breadth of his discovery requests—is irrelevant to whether or not the Court grants the motion to compel.

*1. Delayed Petition Processing*

Request 1, seeking "[a]ll documents identifying specific FAA personnel assigned to process, review, approve, or make decisions regarding Plaintiff's Exemption Petition at any stage from December 2023 through denial, including personnel assignments, case routing records, review responsibilities, and supervisory oversight assignments," ECF No. 84-2 at 3, is overbroad and disproportionate to the needs of the case. Plaintiff challenges processing delays and the alleged initiation of a retaliatory medical investigation, not the denial of the petition itself. Defendants have identified Anne Moore and Kim Young as individuals who have direct knowledge of the processing delays affecting Plaintiff's petition. *See* ECF No. 107-1 at 2. Accordingly, the request is not proportional to the needs of the case.

[16] If Defendants seek to dispute that the FOIA request was acted upon in a timely fashion, however, this request may become relevant to the constructive exhaustion issue, and may be reasserted.

Request 2 is relevant to Plaintiff's claims and proportional to the needs of the case. Request 2 seeks "[a]ll communications, memoranda, notes, decision logs, or case management entries documenting processing decisions, delays, priorities, or case status changes for Plaintiff's Exemption Petition, including any authorizations for processing times exceeding standard guidelines, any communications regarding the timing of the denial decision, and associated metadata including transmission logs and timestamps." ECF No. 84-2 at 3. The Court finds that information responsive to this request is discoverable because it is limited to information relevant to Plaintiff's claim that his petition was subject to discriminatory processing delays. To the extent Defendants object to this request on the basis that it is insufficiently particular because custodians have not been identified, the Court considers that objection moot. Defendants have disclosed Dan Ngo and Sean O'Tormey as FAA personnel with information about the handling of Plaintiff's exemption petition, ECF No. 83-1 at 3, and Anne Moore and Kim Young as personnel with information about delays in the processing of Plaintiff's petition, ECF No. 107-1 at 2.

Request 3 seeks "[a]ll documents reflecting the decision-making process for the exemption denial dated 17 June 2025, including drafts, review stages, approval chains, and any discussions of litigation timing or status in connection with the denial decision, and associated metadata including timestamps and transmission records." ECF No. 84-2 at 3–4. This request, which is designed to discover information about the "decision-making process for the exemption denial," is not relevant; as discussed, Plaintiff does not challenge the actual denial of his exemption petition. Even if some information relevant to Plaintiff's claims might be responsive to Request 3, the request is significantly overbroad.

*2. Medical Referral*

Like Request 2, Request 4 seeks discoverable information. Request 4 seeks "[a]ll documents reflecting the decision to refer Plaintiff's litigation materials, legal complaints, or case

information to the FAA Medical Section, including authorization records, referral communications, instructions to medical personnel, rationale for the referral, and associated metadata including transmission logs and timestamps." *Id.* at 4. This Request is limited to information relevant to Plaintiff's claim that he was subject to a retaliatory investigation. To the extent Defendants object to this request on the basis that it is insufficiently particular because custodians have not been identified, the Court considers that objection moot. Defendants have disclosed Dr. David O'Brien and Michael McKinley as FAA personnel with information about the decision to refer Plaintiff to the FAA's medical section. ECF No. 83-1 at 3; ECF No. 107-1 at 2.

On the other hand, Request 5, which seeks "[a]ll communications between FAA legal personnel and FAA medical personnel regarding Plaintiff, including any discussions of Plaintiff's litigation activity, medical fitness, or case processing, and associated metadata including transmission logs and timestamps," ECF No. 84-2 at 4, is overbroad and not proportional to the needs of the case. Any relevant information responsive to Request 5 is also responsive to Request 4, such that responding to Request 5 would impose an undue burden on Defendants.

3. *Practical Tests*

Requests 6 and 7, which relate to Plaintiff's allegations about the availability of practical testing, are irrelevant to Counts Three and Five.

Request 6 seeks "[a]ll documents identifying specific FAA personnel responsible for scheduling practical tests at Bradley Flight Standards District Office during October 2022 through July 2023, including supervisory personnel with authority over scheduling decisions," and Request 7 seeks "[a]ll communications, notes, or records regarding Plaintiff's requests for practical test scheduling during October 2022 through July 2023, including any internal discussions about Plaintiff's case, available examiners, or scheduling priorities, and associated metadata including transmission logs and timestamps." *Id.* at 4–5. The operative complaint does not clearly assert a

claim in Count Three or Five based on the FAA's alleged failure to schedule his practical test. While the operative complaint asserts that "individual officials chose not to implement structural reforms including standardized DPE selection, formal mentorship programs, and national oversight structure, demonstrating deliberate indifference to Congressional mandate and constitutional access requirements," ECF No. 49-1 ¶ 40(a), it is not clear that Count Three of the operative complaint (which asserts a *Bivens* claim against the individual Doe Defendants) could plausibly encompass these alleged "structural" allegations. *Id.* ¶¶ 58–64. Plaintiff's pleading is too ambiguous to support a finding that the wide-ranging Requests 6 and 7 are relevant to the claims at issue in this action.

*4. "MOSAIC Rulemaking"*

Requests 8 and 9 are similarly irrelevant to this matter. Request 8 seeks "[a]ll documents identifying specific FAA personnel assigned to review, process, or respond to Plaintiff's MOSAIC rulemaking comments submitted in January 2024, including any special handling procedures applied to Plaintiff's submissions, and associated metadata including transmission logs and timestamps," and Request 9 seeks "[a]ll communications or notes regarding Plaintiff's litigation status in connection with processing his MOSAIC comments, including any discussions of how his legal activities should affect comment review or response, and associated metadata including transmission logs and timestamps," ECF No. 84-2 at 5. But the term "MOSAIC" appears only twice in the operative complaint, and neither reference bears any discernible relation to Plaintiff's claims in Count Three or Five. *See* ECF No. 49-1 ¶ 18 ("Plaintiff does not seek review, vacatur, or modification of any FAA final rule, including but not limited to the MOSAIC rule referenced herein"); *id.* ¶ 31 ("The FAA's July 2025 MOSAIC rule response demonstrates arbitrary regulatory distinctions without rational basis."). These allegations do not put Defendants on

notice of any claim against them—nor is there sufficient detail for the Court to discern what Plaintiff may be challenging—with respect to his "MOSAIC rulemaking comments."

5. *Policy Changes*

Requests 10, 11, and 12 relate to changes in FAA policy that Plaintiff alleges were "designed to avoid legal accountability during pending litigation." *Id.* ¶ 59. Plaintiff's motion is granted as to Request 10 and denied as to Requests 11 and 12. Request 10, which seeks "[a]ll documents reflecting the December 2024 decision to modify FAA Order 8900.2C paragraph 92 (two-week scheduling requirement) to FAA Order 8900.1 (30-day recommendation), including decision-makers, rationale, timing considerations, any connection to pending litigation involving scheduling requirements, and associated metadata including transmission logs and timestamps," ECF No. 84-2 at 5, may produce information relevant to Plaintiff's claim that the FAA changed its policy for improper reasons. This Request is limited to information relevant to such a claim, including information that may demonstrate that pending litigation was or was not the reason for the policy change. To the extent Defendants object on the basis that the request is insufficiently particular because custodians have not been identified, the Court considers that objection moot. Defendants have disclosed Karen Lucke as FAA personnel with information about policy changes. ECF No. 107-1 at 2.

Request 11 and 12, on the other hand, are overbroad and disproportionate to the needs of the litigation. Request 11 seeks "[a]ll communications among FAA personnel and any other persons regarding Plaintiff's litigation and its potential impact on agency policies, procedures, or processing decisions, including metadata such as transmission logs, delivery records, and timestamp data." ECF No. 84-2 at 6. Request 11 seeks all communications relating to Plaintiff's litigation, and is not limited to information relevant to Plaintiff's actual claim—that is, whether the litigation affected the rulemaking. Any relevant information responsive to Request 11 is also

responsive to Request 10, such that responding to Request 11, which veers into irrelevant territory, would impose an undue burden on Defendants. And Request 12 is vague and not proportional to the needs of the case: it seeks "[o]rganizational charts, personnel directories, or assignment records identifying specific individuals with decision-making authority over exemption petition processing, practical test scheduling, medical investigations, and rulemaking comment review during the relevant time periods." *Id.* The term "decision-making authority" is insufficiently specific, and Defendants have identified the individuals relevant to exemption petition processing, policy changes, and medical investigations (Dan Ngo, Sean O'Tormey, Dr. David O'Brien, Michael McKinley, Karen Lucke, Anne Moore, and Kim Young). ECF No. 83-1 at 3; ECF No. 107-1 at 2. And, as discussed with respect to Requests 6, 7, 8, and 9, information relating to practical test scheduling and "rulemaking comment review" is not discoverable because it is irrelevant to the live claims in this matter.

## V. MOTION FOR EQUITABLE TOLLING

Finally, Plaintiff's motion for equitable tolling is denied as premature. Plaintiff requests that the Court toll the statute of limitations applicable to his *Bivens* claims against individual FAA officials on the basis that he has "been prevented from identifying the individual Doe defendants and obtaining the facts necessary to plead specific conduct against them." ECF No. 89 at 1. He seeks a declaration that the *Bivens* claims remain timely and tolling of the statute of limitations "for three years form the date discovery becomes available." *Id.* at 2.

This motion is premature because no party has asserted a statute of limitations defense to Plaintiff's claims. "The equitable tolling doctrine does not come into play, of course, until the defendant has claimed that the plaintiff's cause is time barred. The burden then shifts to the plaintiff to demonstrate that the statute should be tolled." *Long v. Abbott Mortg. Corp.*, 459 F.

Supp. 108, 113 (D. Conn. 1978); *In re Anderson*, 623 B.R. 199, 217 (D. Conn. 2020) ("As a procedural matter, equitable tolling is interposed in response to a statute of limitations defense."). The Doe Defendants have not moved to dismiss on the basis that Plaintiff's claim is untimely; indeed, they have not been served with or responded to a complaint in this matter.[17] Thus, Plaintiff's motion is premature.

## VI. CONCLUSION

For the reasons described above, Defendants' motion to dismiss Counts One, Two, and Four of the operative complaint, ECF No. 73, is granted. Defendants' motion to stay discovery, ECF No. 84, is denied as moot. Plaintiff's motion to compel, ECF No. 87, is granted with respect to Request 3 of the first set of requests for production and Requests 2, 4, and 10 of the second set of requests for production; it is otherwise denied. Plaintiff's motion for equitable tolling, ECF No. 89, is denied. Plaintiff's motion to file a sur-reply in opposition to the motion to dismiss, ECF No. 93, is denied.

Plaintiff may amend his complaint to name the individual Defendants relevant to Count Three by October 13, 2026.

**SO ORDERED** at Hartford, Connecticut, this 28th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE

[17] The Court further notes that any amended complaint naming the Doe Defendants and reasserting Counts Three and Five may be subject to relation back under Fed. R. Civ. P. 15(c)(1)(C).